FILED

UNITED STATES DISTRICT COURT 2005 FEB 11 P 12: 32

DISTRICT OF CONNECTICUT U.S. DISTRICT COURT

HARTFORD, CT.

UNITED STATES OF AMERICA : 

VS. : 3:01CR200 (AWT)

JOHN BUTLER : FEBRUARY 11, 2005

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant pled guilty on November 12, 2003, before the Honorable Dominic J. Squatrito to Count One of an indictment charging him with a Conspiracy with Intent to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §846 and §841(b)(1). This crime carries a mandatory minimum sentence of five years. The underlying activity involves a conspiracy between the defendant, Jermaine Clarke, and Anthony Chavis to transport approximately three kilograms of cocaine from Connecticut to California on July 21, 2000. The probation office correctly computes the defendant as being in Criminal History Category II but has determined that he has a total offense level of 27. This figure was arrived at by adding two points to the defendant's Base Offense Level pursuant to Guideline Section 3C1.1, Obstruction of Justice. It is this enhancement to which the defendant takes issue. Defendant will address himself first to the guideline issues involved in this case and in light of United States v. Booker holding that the guidelines are merely advisory will set forth what he

1

believes is an appropriate sentence pursuant to Title 18 U. S. Code §3553(a).

## I.    Guidelines

### A.  <u>Obstruction of Justice</u>

Paragraph 22 of the pre-sentence report seeks to enhance the defendant by two levels under Section 3C1.1 for Obstruction of Justice.  It is alleged in there that at the suppression hearing, the defendant lied when he testified under oath that he did not attempt to transport drugs on July 21, 2000, and that he had no knowledge of the drugs that were found under the seat in front of him.  The purpose of the suppression hearing was not to determine whether the defendant was guilty or not but simply to determine whether an inculpatory statement he made to DEA agents should be suppressed.  Defendant alleged that he was in custody and was not given his Miranda rights.  To receive an enhancement for obstruction of justice, the defendant must intentionally obstruct, and the Government bears the burden of proving by a preponderance of the evidence that the defendant has obstructed.  <u>United States v. Belletiere</u>, 971 F2d 961 (3rd Cir. 1992).  More importantly, if the obstruction is based on perjury or false statement, it must be material and material means material "to the proceeding in which it is given".  <u>United States v. Zagari</u>, 111 F3d 307 (2d Cir. 1997). The test is if the Court finds that the testimony was false, it must next decide if the testimony were credited, would it tend to influence the trier of fact in its determination

2

on the issues before it.  c.f. <u>United States v. Stephens</u>, 369 F3d 25, 27 (2d Cir. 2004).

False statements given by a defendant at a suppression hearing are only material in a situation where "...if credited by the District Court, [they] would have resulted in the granting of his motion to suppress".  <u>United States v. Lincecum</u>, 220 F3d 77 (2d Cir. 2000).  Thus, in <u>Lincecum</u>, the defendant lied when he said he asked to speak to a lawyer before giving a statement.  The agents testified to the contrary that he had never asked for an attorney.  Since that issue was germane to the admissibility of the statement taken from the defendant, an obstruction would be appropriate.  In the case now before this Court, it would make no difference to the ultimate ruling of Judge Squatrito whether or not Mr. Butler knew or did not know about the drugs that were underneath his seat on the plane on July 21, 2000.  Stated differently, Judge Squatrito could very well have believed Mr. Butler that he was not aware of the drugs that had been taken on the plane and still have found that there was no basis to suppress his statement.

In a further effort to enhance the defendant's offense level for obstruction, the Government wrote to the probation officer on July 28, 2004, and made reference to Mr. Butler's statements at the suppression hearing before Judge Squatrito wherein he testified that to his recollection, he was never told he was "not under arrest".  Agents testified at the hearing that they did tell Mr. Butler he was under arrest.  Admittedly,

3

these statements arguably come within the materiality issue of Section 3C1.1.

However, it must be remembered that Mr. Butler testified on October 28, 2002, almost

two and a half years after a fleeting incident of July 20, 2000.  There is no reason to

believe nor can the Government sustain its burden of proof that the statements by Mr.

Butler were not the result of a faulty memory or confusion as opposed to an

intentional, willing, and knowing misstatement of facts.  More importantly, there is

nothing in Judge Squatrito's findings that Mr. Butler was lying.  The Court saw and

heard Mr. Butler testify and, to the undersigned's recollection, watched him closely

during the course of this proceeding.  When Judge Squatrito wished to characterize a

witness as not being credible, such as he did with Mr. Chavis, he certainly knew how

to do it.  Ruling on defendant's motion to suppress, p. 9 n.8.  This Court, at this time,

cannot tell from the bare record whether Mr. Butler was confused or mistaken or

committing perjury on this issue.  At a minimum, this matter should be referred back to

Judge Squatrito who did see the witnesses for a specific finding whether, in his

opinion, Mr. Butler committed perjury.

Every statement by a defendant at a suppression hearing which the Court finds

is false and not true does not lend itself to a basis for an obstruction of justice

enhancement.  United States v. Sanders, 341 F3d 809 (8th Cir. 2003).  The Court must

do more than make a finding that a statement is false but must find it is perjurious.  Id.

4

When the guideline speaks about willfully false statements, it means "the defendant consciously acted with the purpose of obstructing justice". <u>United States v. Thomas-Hamilton</u>, 907 F2d 282, 285 (2d Cir. 1990).  The obstruction or lie must be intentional and knowing.  <u>United States v. Belletiere</u>, 971 F2d 961, 965 (3rd Cir. 1992).  Before the Court can enhance for obstruction, it must make findings which show it considered all the elements of perjury and that they all have been met.  <u>United States v. Zagari</u>, 111 F3d 307, 328 (2d Cir. 1997).  The Court cannot determine whether the false statement was a result of confusion or mistake, there is result of ...confusion or mistake or faulty memory, it cannot enhance for obstruction.  <u>United States v. Dunnigan</u>, 507 U.S. 87, 92-95 (1993).

## B.    The Plea Agreement and Relevant Conduct

The defendant and the Government entered into a plea agreement as permitted by Section 6B1.1 of the Guidelines.  In this agreement and Stipulation of Offense Conduct, the parties, <u>including the Government</u>, stipulated and agreed the defendant would be sentenced based upon three kilograms of cocaine.  Defendant, based upon this plea agreement and the extensive plea negotiations which preceded it and to which the undersigned can recount to the Court, gave up certain rights.  Most importantly, he gave up the right for a trial and the right to call and confront witnesses against him.  One of those witnesses, of course, would have been Anthony Chavis, a

man whose credibility was seriously questioned by Judge Squatrito after he testified on this very issue. Ruling on suppression motion, p. 9 n.8. Having been induced to plead guilty with the assurance that the Government would not seek to credit Mr. Butler with more than three kilograms, the defendant agreed to give up (1) his right to appeal unless the sentence is in excess of 81 months, and (2) his right to seek a minor role adjustment, particularly significant since Chavis himself described Butler as simply a "carrier". Tr. 10/28/02 at p. 4-5.

Unfortunately for Mr. Butler, shortly after he did plead guilty, the Government apparently informed probation that he was, in the Government's opinion, responsible for far more than three kilograms. After that information was incorporated in the pre-sentence report, the Government gratuitously, and without any apparent request from the probation officer, wrote probation and the Court that it believed it could show that the higher drug quantity referred to in the probation report is accurate and that the Government only agreed to three kilograms "as a concession in exchange for the guilty plea". Government's Sentencing Memorandum at p. 3, August 13, 2004.

The Government has clearly and blatantly breached the plea agreement. The stipulation to a certain amount of drugs "is essentially a promise by the Government and the defendant not to contest the stipulated amount and to represent to the Court their joint view that the amount is accurate". United States v. Granik, (2d Cir. 2004).

Factual stipulations and plea agreement such as agreement as to the amount of drugs are binding. United States v. Martinez, 122 F3d 421, 422-23 (7th Cir. 1997). When defendants have stipulated to a specific amount of drugs, the Second Circuit has been crystal clear that even impliedly, the defendant cannot challenge that amount at sentencing. United States v. Bradbury, 189 F3d 200, 201-202 (2d Cir. 1999). "If defendants are not held to their factual stipulation, therefore, the Government has no reason to make concessions in exchange for them." United States v. Lopez, 356 F3d 463, 469 (2d Cir. 2004). Even indirect, implicit rejection of the Government's promises have been found to be violations of the plea agreement by the Government. United States v. Gonczy, 357 F3d 50, 53 (1st Cir. 2004). The Court in finding a violation does not have to find that it was done deliberately by the prosecution. Id. "The Government is required to meet 'the most meticulous standards of both promise and performance'." United States v. Gonczy, supra citing United States v. Riggs. 287 F3d 221 at 224 (1st Cir. 2002) (parties stipulated to no leadership role and the Government, at sentencing, strongly implied that the defendant was a leader). The Court should not condone "end runs" around express plea agreements such as agreeing to the specific amount of drugs. United States v. Gonczy at 54. It is of no consequence that at sentencing the prosecution may stand up and tell the Court that it should sentence Mr. Butler on the three kilograms as agreed to in the plea

7

agreement. Id. See also, <u>United States v. Rivera</u>, 357 F3d 290 (3rd Cir. 2004), <u>United States v. Canada</u>, 960 F2d 263, 269 (1st Cir. 1992).

The Second Circuit, more so than other circuits, has rigorously applied the contract law to alleged breaches of plea agreements. For example, the Second Circuit has held that it is plain error for a prosecutor to breach a plea agreement even if the defendant didn't raise the issue at trial. <u>United States v. Lawlor</u>, 168 F3d 633 (2d Cir. 1999). Similarly, the defendant recognizes that the plea agreement does inform the defendant that the Government reserves the right to make information available to the Court and argue for a specific sentence. But ambiguities in plea agreements should be construed in favor of the defendant. <u>United States v. Fitch</u>, 282 F3d 364 (6th Cir. 2002). This is standard language in a plea agreement, and a case almost directly on point where the Government's investigator informed probation of an additional amount of drugs not countenanced in the stipulation or the plea agreement, the Eleventh Circuit has found a violation. <u>United States v. Boatner</u>, 966 F2d 1575 (11th Cir. 1992) (Government investigator breached plea agreement when it told probation that the defendant was involved in over three kilograms of cocaine where a lower amount was stipulated and agreed to by the parties). See also, <u>United States v. Riggs</u>, 287 F3d 221 (1st Cir. 2002). Nor has the Second Circuit bought into the creative argument of a prosecutor that, although it agreed to one specific amount,

8

upon more careful examination of the record, the Government believed a higher amount was appropriate.  United States v. Palladino, 347 F3d 29 (2d Cir. 2003).

The damage, of course, has been done.  The Court has been informed of a much higher amount of drugs and the resulting great increase in the Base Offense Level.  The remedy found appropriate by a number of Appellate Courts on appeal in this situation has been to remand it to a different judge than the one to whom the improper information was disseminated.  United States v. Boatner, supra at 1580; United States v. Rivera, 357 F3d supra (remand to a different judge appropriate remedy for breach of a plea agreement).

As to the enhancement itself, it would appear that the information of the additional cocaine comes mainly from the testimony of Anthony Chavis.  Mr. Chavis, it was discovered at the suppression hearing, was facing life in prison and was tempted by the prospect of a 5K1 motion to induce him to cooperate.  As said more than one time in this memorandum of law, Judge Squatrito, who was able to gauge the credibility of Mr. Chavis, had serious doubts as to the veracity of his testimony.  This Court has not seen Mr. Chavis and, pursuant to the plea agreement, should see nothing of him.  However, to the extent that the Government has the burden of proving the enhanced amount of drugs, the Court should note with great concern Judge Squatrito's evaluation of Mr. Chavis.

9

II.    **The United States Supreme Court in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) Held that the Guidelines are Merely Advisory and the Court is not Bound to Sentence Within the Guideline Range.**

Effectively, this means that this Court can sentence Mr. Butler anywhere between five years and forty years. This decision appears to be that the Court should consult the Guidelines but should primarily look at Title 18 U.S. Code §3553(a) in deciding what sentence to impose. See also, <u>United States v. Ranum</u>, CR04-cr-31 (E.D. Wis. 2005). (Attached) <u>Booker</u> requires the judge to first consider the guidelines and then determine whether a non-guideline sentence is applicable and should be utilized based upon the considerations of §3553(a). Setting aside the Guidelines for the moment, there are substantial reasons why the Court should sentence lower than the Guideline range. Mr. Butler is a man in his fifties who has had no criminal activity apart from the instant offense for over twenty years. He has had a battle during his lifetime with drugs and yet has been a productive member of society. He has worked at numerous jobs, supported a family, has a loving and caring wife and three young children. As seen from letters that have previously been provided to the Court, he has been involved in extensive community service, some of which precedes his arrest in the instant case. This activity should not be seen simply as an effort to gain favor with the Court shortly before sentencing. Numerous people will testify at sentencing concerning the character of this man. There is a mandatory

10

minimum sentence of five years which this Court cannot go below. The instant offense happened almost five years ago when Mr. Butler became a carrier for the Chavis and Clarke drug operation. To say that his life has changed profoundly since then is an understatement. A sentence of five years would "protect the public from further crimes by this defendant" and "afford adequate deterrence to criminal conduct". §3553 id. The defendant does not need further education or vocational training and could receive out-patient drug counseling in Georgia with his family to curb his longing for marijuana. Id.

While defendant has not expressly addressed himself to departure issues because of the effect of <u>Booker</u> and <u>Crosby</u>, it is submitted that the defendant's community service as attested to in a letter from Pastor Rafael Gomez was more than extraordinary. This service will be elaborated on at the time of sentencing. Thus, Mr. Butler, even before <u>Booker</u> and <u>Crosby</u>, should qualify for a downward departure under §5H1.11 of the Guidelines. <u>United States v. Serafini</u>, 233 F3d 758 (3rd Cir. 2000), <u>United States v. Jones</u>, 158 F3d 492 (10th Cir. 1998).

## III. Conclusion

It is respectfully submitted that this Court sentence Mr. Butler to a five year term of imprisonment.

11

Respectfully submitted,

JOHN BUTLER

By: _____

Richard S. Cramer
449 Silas Deane Highway
Wethersfield, CT 06109
Tel. (860) 257-3500
Federal Bar No. ct00016
Email: cramer@snet.net

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed and faxed this 11th day of February 2005 to:

Mark Rubino
Assistant U. S. Attorney
P.O. Box 1824
New Haven, CT 06508

_____

Richard S. Cramer

12